PETER SCHOONOVER, Plaintiff in Error, *v.* HARMON MYERS, Defendant in Error.

ERROR TO KENDALL.

The waiving of an examination before a magistrate, and giving bail for appearance at the Circuit Court, is not such an admission of guilt as will preclude the party from sustaining an action for a malicious prosecution.

A discharge of a person arrested, by the prosecuting attorney, is the usual mode of terminating a prosecution in this State. A bill need not be ignored, before a party arrested may maintain an action for a malicious prosecution.

The notes of a magistrate, taken on the hearing of a criminal charge, and never read to, or signed by the party, are not a deposition; and are not evidence to impeach or contradict such party.

MYERS sued Schoonover in case for a malicious prosecution, the latter having caused Myers and two of his infant children to be arrested for having stolen a bee-hive, worth ten dollars, and causing the children to be confined for five days. Myers was ill, at the time the officer came to arrest him, but he subsequently appeared before the examining magistrate, waived an examination, and gave bail for his appearance at the Circuit Court. The two children were acquitted and discharged, after the five days' confinement. At the Circuit Court Myers was discharged by the prosecuting attorney, no bill having been found by the grand jury. Schoonover pleaded not guilty. There was a trial and verdict for Myers, for $4,500. A new trial was denied, and Schoonover appealed. The case turned upon the testimony of a boy, about fifteen years of age, named Brill, who had been living for eleven years in the family of Schoonover; and who had been examined before a justice of the peace, in relation to the theft, and also in an action of trespass between the same parties. The notes of evidence given by Brill, and taken by the magistrate on the primary examination, were offered on the trial for malicious prosecution, but were not allowed to be read to the jury. Brill testified that he had been confined and ill-treated in various ways, by Schoonover, to induce him to testify falsely. The evidence of Brill was contradicted in many particulars, and an attempt was made to impeach him.

LELAND & BLANCHARD, and HELME & SMITH, for Plaintiff in Error.

The question whether there was probable cause, was submitted to the jury as one of fact merely. What facts constitute probable cause, or the want of it, is a question of law. 14 Shepley, 266; 3 Strobh. 307; 20 Ohio, 119; 5 Sandf. 77;

7 Ind. 448; 13 Ill. 703; 3 Selden, 384; 2 Duer, 261; 3 Heath (Me.) 523; 2 Pick. 81; 23 Ill. 577; Elementary books generally.

BUSHNELL & AVERY, and E. F. BULL, for Defendant in Error.

No mere frivolous errors will avail plaintiff in error, even if they exist in the record. Some one fatal error must exist, which will naturally work injustice to the party, before the court will set aside a verdict. *Barry* v. *Goff*, 1 Chip. 304; *Hinton* v. *Mc Veal*, 5 Ham. 509; *Maddox* v. *Jackson*, Munf. 463.

Whether the facts and circumstances which amount to probable cause, exist in the particular case, is a question of fact and not of law. 1 Pick. 524; 8 Mass. 122; 1 Hill, S. C. 82; 3 Gill & Johns. 377; 4 Munf. 59; 3 Wash. C. C. 31.

The court is referred to 17 Johnson's Rep. 176, where it is decided, that in order to entitle a party to give in evidence what a witness swore to on a former trial between the same parties, it must be shown that the witness is dead. Also to *Jessup* v. *Cook*, 1 Halst. 434; *Finn* v. *Commonwealth*, 5 Rand. 701; *Chess* v. *Chess*, 17 S. & R. 409; *Drayton* v. *Wells*, 1 N. & M. 409; *Walker* v. *Walker*, 14 Geo. 242; *State* v. *Bonney*, 35 Maine, (5 Red.) 105; *Bragg* v. *Commonwealth*, 10 Gratt (Va.) 722; *Bergen* v. *The People*, 17 Ill. 426.

It is not sufficient cause for granting a new trial, that the court is not satisfied with the verdict, or that upon a view of all the testimony, the court would have rendered a different verdict. *Foustal* v. *Bishony*, 2 A. K. Marsh. 521; *Owings* v. *Gray*, ib. 520; *Johnson* v. *Blackman*, 11 Conn. 342.

The court will not set aside a verdict as against the evidence in a cause, merely because they might, upon the examination of the evidence, have arrived at a result different from that found by the jury. *Wendall* v. *Safford*, 12 N. H. 171; *Ways* v. *Collison*, 6 Leigh, 230; *Burr* v. *Shanks*, 5 Leigh, 598; 16 Ill. 66.

A verdict of an inferior court will not be reversed, as being

against evidence, where there was *any* evidence to support it. *Bagly* v. *Lewis*, 2 Mour. 142; *Dodge* v. *Britain*, 1 Meigs, 84.

It must be a very flagrant case where the Supreme Court will grant a new trial on the ground that the verdict is against evidence, where it has been refused in the court below. *Price* v. *Evans*, 4 B. Mon. 386; *Leigh* v. *Hodges*, 3 Scam. 15; *Gillett* v. *Sweat*, 1 Gilm. 475; *King* v. *Hill*, 2 Tayl. 211; *Carson* v. *Allen*, 6 Dana, 395.

The jury alone are the judges of malice, and their verdict should be for plaintiff in just such proportion as the evidence on trial develops the degrees of malice on part of defendant; hence, courts will not interfere with the verdicts of juries, unless under circumstances of peculiar hardship. 3 Wash. C. C. 31; 4 Conn. 426; 1 Cow. 251; 1 Miss. 13; 12 John. 454; 3 Scam. 15; 1 Gilm. 475; 7 Miss. 220; 3 Gill & Johns. 377; 5 Mass. 353; 4 Wend. 423; 5 Wend. 48; 2 Wend. 352; 4 B. Mon. 386; 2 Mour. 76.

Appellate courts will never grant a new trial because the verdict is apparently against the weight of evidence, where two juries have, as in this case, found the same way. In this case, the first jury found for plaintiff, five thousand dollars— on the last trial, four thousand five hundred dollars. *Coffin* v. *Newburyport Marine Ins. Co.*, 9 Mass. 436; *Barrett* v. *Rogers*, 7 Mass. 297; *Fowler* v. *Ætna Ins. Co.*, 7 Wend. 270; *Dorsey* v. *Daugherty*, 1 A. K. Marsh. 182.

Where there have been two trials with a like result, a new trial will not be granted because the verdict appears to be against the evidence. And in the case of *Mayer* v. *Wiltberger*, Geo. Dreis, Part II, 20, the court say : The Supreme Court will not interfere to grant a new trial in opposition to the finding of a jury, and especially after two concurrent verdicts. 4 Dana, 395; 1 Scam. 490; 7 Wend. 270; 18 Ill. 493; 37 Maine, (2 Heath), 221; 4 Texas, 84; 16 Ill. 66; 17 Geo. 418.

The law is well settled to be, that courts will not grant new trials in cases of *tort*, on account of heavy damages. If they interfere at all, it is only to require a party to remit a part of the damages ; and scarcely can a case be found where this has been done. *Palmer* v. *Fish*, 2 Curtis C. C. 14; *Treanor* v.

*Donahoe*, 9 Cush. (Mass.), 228; *Sexton* v. *Brock*, 15 Ark. 345; *McGee* v. *Shafer*, 9 Texas, 20; *Schleneker et al.* v. *Prisley*, 3 Scam. 484; *Simpon* v. *Pitman*, 13 Ohio, 365; *Gillert* v. *Woodbury*, 9 Shep. 246.

CATON, C. J. This case presents a most extraordinary spectacle. Rarely have we met, either in the books or in our own experience, so revolting a case of conspiracy, subornation of perjury, and perjury, as this record presents; and the difficulty in the case, is to determine which is the guilty party, and which the victim. We have carefully studied all the evidence in the light of the very lucid arguments on both sides, in which the subject is quite exhausted, and we still have doubts hanging about us, whether the boy Brill is an abandoned, perjured little villain, as one party insists, or a friendless waif cast upon the world, whom the defendant, by the most inhuman cruelty, sought to mould to his own wicked purposes. The whole case really depended on the credibility of this witness, and the jury believed him, and in this we cannot say they were wrong, nor should we have reversed their finding, had they disbelieved him and found the other way, though we should have been as much inclined to do so then as we are now. We shall not undertake the unprofitable task of reviewing this volume of testimony, but shall proceed to consider the questions of law presented by the record, or such of them as we think are of such importance as to require a discussion here.

The first question of law which is presented, arises upon the fact, that when the plaintiff was brought before the magistrate upon the prosecution, for the institution of which this action is brought, he waived an examination and voluntarily gave bail for his appearance at the Circuit Court. This, it is insisted, was an admission at least of such a probability of guilt as to preclude him from ever after saying, that the prosecution was maliciously instituted. We do not think so. Such a course may often be judiciously advised, when the party is not only innocent in fact, but known to be so by the prosecutor. At least, this course should have no more influ-

ence than would the finding of the magistrate, upon a hearing of the evidence, that there was probable cause, and binding the party over for his appearance, or committing him.

Again it is said, that the prosecution was not sufficiently ended when this action was brought. No indictment was found, nor was one returned *ignored* by the grand jury, but the recognizance was discharged by the State's attorney. This, according to our practice, is the usual mode of terminating a prosecution where the party has been recognized by a magistrate, or in case he has been committed; it is by discharging him from jail, where the evidence is insufficient to induce the grand jury to find an indictment. It is not usual in this State for the State's attorney to prepare an indictment and present it to the grand jury in the first instance, as in England, to be by them *ignored*, if not sustained by the proof. Indictments here are usually drawn only when directed by the grand jury after having heard the proof. The only record, therefore, of the termination of the prosecution is the order to discharge the prisoner or the recognizance.

It is objected, that the deposition of Brill, taken on the complaint before the magistrate, was improperly excluded from the jury. Had there been such a deposition taken, it might properly have been admitted for the purpose for which this paper was evidently offered. But this paper was not such a deposition. It was the notes of the magistrate of the oral testimony of that witness which were never read to, or signed by, him. This paper was not competent evidence in the cause.

The judgment must be affirmed.

*Judgment affirmed.*